## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KYLE NICHOLAS GADKE,** individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION** |
| *Plaintiff,* | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **ADVANCE FUNDS NETWORK LLC**, a New York limited liability company, | |
| *Defendant.* | |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Kyle Nicholas Gadke ("Plaintiff" or "Gadke") brings this Class Action Complaint and Demand for Jury Trial against Defendant Advance Funds Network LLC, ("Defendant" or "Advance Funds Network") to stop the Defendant from violating the Florida Telephone Solicitation Act by directing the making telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.     Plaintiff Kyle Nicholas Gadke is a resident of Miami, Florida.

2.     Defendant Advance Funds Network LLC is a New York limited liability company with its principal place of business in Brooklyn, New York. Defendant Advance Funds Network conducts business throughout this District, New York, and the U.S.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the FTSA.  Further, Plaintiff alleges a Florida class, which will result in at least one Class member from outside New York.

4.     The venue is proper under 28 U.S.C. § 1391(b) because the Defendant resides in this District.

## INTRODUCTION

5.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant

barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

7.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id*.

8.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

9.    According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in March 2022 alone, at a rate of 140.8 million calls per day. www.robocallindex.com (last visited April 13, 2022).

10.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13.     Defendant Advance Funds Network LLC is a New York limited liability company which provides financing solutions to existing businesses throughout the U.S.[3]

14.     Defendant Advance Funds Network uses automated systems to send outbound telephonic sales calls, including text messages, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the "no solicitation list", soliciting consumers to use Defendant's financial services.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.advancefundsnetwork.com/our-company/

15.     Defendant Advance Funds Network also made or caused to be made unsolicited telephonic sales calls to residential, mobile, and/or telephonic paging device telephone numbers, including the Plaintiff's mobile, without identifying the first or last names of the telephone solicitor, and without correctly identifying the business on whose behalf the solicitation was made.

16.     Defendant Advance Funds Network hires employees to place cold calls and send marketing text messages to consumers to solicit business for the Defendant. For instance, this job post for the role of Outbound Financial Sales Agent, mentions cold calling as a part of the responsibilities:



Generate & prospect consistently. Ability to communicate professionally and effectively with business owners and team members. Company wide online meetings on Mondays, Wednesdays & Thursdays.

**Qualifications:**

Phone experience a must (sales, telemarketing & prospecting). Tons of energy, passion and enthusiasm alongside basic sales skills are a must. Superior communications skills and the ability to use our CRM (Quick base & RingCentral). The majority of our business is done via email, text & phone.

Ability to be coached and follow a proven & scalable sales process. Building long term residuals & happy clients is our goal.

Ability to exercise own judgment and discretion and work independently. We are not looking to micro-manage people.

**Benefits:**

Effort based incentives. Commissions paid weekly Direct Deposit.

Fully Integrated Cloud based CRM (Intuit Quick base), Fully supported Ring Central Soft Phone integration. Fully supportive front & back offices, Daily online live meetings and trainings.

A constantly renewed & scrubbed database. We've been successfully generating prospects & revenue for the last 13 years. It's full of new opportunities for the hustling agent & now the Remote Work From Home Agent or digital nomad.

17.     Several employees of Defendant Advance Funds Network have posted online about their cold calling experience while working for the Defendant, including:

### Like it or leave it.

Funding Rep (Current Employee) - US - January 8, 2020

This job is not for everyone as it is totally commission. That is not all bad as you are able to manage your time and will get rewarded if you put in the time. If you are someone who is pursuing other endeavors then you can be comfortable here as you can spend time on those. But realize to make a good living here, it is necessary to follow a rigorous plan of cold calling which can be time consuming.

- 

[4]

[4] https://www.indeed.com/cmp/Advance-Funds-Network-LLC-2/reviews?fcountry=US&sort=rating_asc



Current Employee, less than 1 year

**Great company that doesn't micro manage its employees**

Aug 24, 2020 - Funding Specialist in Brooklyn, NY

✔ Recommend    ◯ CEO Approval    ✔ Business Outlook

**Pros**

This was my first job in outbound sales and honestly I haven't looked back since. Great work environment and great people.

- [5]

18.    Multiple consumers have posted complaints online about receiving unwanted solicitation calls from Defendant Advance Funds Network, for instance:

- Douglas H, currently the Chief Vertical Officer at Defendant Advance Funds Network, acknowledged and apologized to a consumer for the spam calls they received from the Defendant:



Advance Funds Network - multiple dead air calls from these scammers trying to sell you a load of BS.

*Caller: Advance Funds Network*
*Call type: Telemarketer*

Reply    !

**Douglas H** replies to jim
16 Aug 2011

👎    0    👍

We apologize for the dead call.  We are calling using a sophisticated phone dialing system that is in accordance with all FCC rules and regulations regarding calls to businesses.  Should you wish to be removed from the list. Simply call us and we would be glad to do so!
888-310-3110
Advance Funds Network

[6]

[5] https://www.glassdoor.com/Reviews/Advance-Funds-Network-Reviews-E3617992.htm
[6] https://whocallsme.com/Phone-Number.aspx/8883103110



★★★★★                                                    30 Oct 2020

**Company is a scam and obviously wanted…**

Company is a scam and obviously wanted just my information . <u>They contacted me told me could have me funded</u> and approved in just one hour here it is 3 days later and haven't herd a single word and they don't even pick up the phone definitely wouldn't trust these people . I feel like all there reviews are fake . Horrible company all around .

- [7]

---

★★★★★                                                     9 Jun 2017

**Bait & switch shop**

Bait & switch shop. <u>They solicited me,</u> I said I was not interested in anything over 8%, they said they <u>would try.</u> weeks later they are sending me email telling me I am approved for 8%, once they even told me it was really 6%, right up to the day the send me the note (which was brokered out to someone else which they also did not tell me up front) I see the note is for almost 12% and they still continued to tell me with some fuzzy math that this 12% apr actually worked out to 8%. These people are not good people.

- [8]

19.     Other consumers have posted complaints online about receiving unsolicited telephonic sales calls and text messages from Defendant Advance Funds Network, for instance:



**Bait & switch shop**

Bait & switch shop. <u>They solicited me,</u> I said I was not interested in anything over 8%, they said they <u>would try.</u> weeks later they are sending me email telling me I am approved for 8%, once they even told me it was really 6%, right up to the day the send me the note (which was brokered out to someone else which they also did not tell me up front) I see the note is for almost 12% and they still continued to tell me with some fuzzy math that this 12% apr actually worked out to 8%. These people are not good people.

- [9]

---

[7] https://ie.trustpilot.com/review/www.advancefundsnetwork.com?stars=1
[8] *Id.*
[9] https://ie.trustpilot.com/review/www.advancefundsnetwork.com?stars=1



- 
    > Company is a scam and obviously wanted...
    >
    > Company is a scam and obviously wanted just my information . They contacted me told me could have me funded and approved in just one hour here it is 3 days later and haven't herd a single word and they don't even pick up the phone definitely wouldn't trust these people . I feel like all there reviews are fake . Horrible company all around .                                                10

- A complaint posted by a consumer about receiving unwanted calls from Defendant Advance Funds Network to which Defendant's Chief Experience Office, Douglas Haddad[11], responded acknowledging that Defendant uses "sophisticated phone dialing system" for calling:

    > Advance Funds Network – multiple dead air calls from these scammers trying to sell you a load of BS.
    >
    > *Caller: Advance Funds Network*
    > *Call type: Telemarketer*
    >
    > [ Reply ]  [ ! ]

    > **Douglas H** replies to jim                                    👎  0  👍
    > 16 Aug 2011
    >
    > We apologize for the dead call.  We are calling using a sophisticated phone dialing system that is in accordance with all FCC rules and regulations regarding calls to businesses.  Should you wish to be removed from the list. Simply call us and we would be glad to do so!
    > 888-310-3110
    > Advance Funds Network                                                            12

20.    Multiple employees of Defendant Advance Funds Network have posted reviews online about Defendant's cold calling practices, including:

---

[10] *Id.*
[11] https://www.advancefundsnetwork.com/our-team/
[12] https://whocallsme.com/Phone-Number.aspx/8883103110

**Like it or leave it.**

Funding Rep (Current Employee) - US - January 8, 2020

This job is not for everyone as it is totally commission. That is not all bad as you are able to manage your time and will get rewarded if you put in the time. If you are someone who is pursuing other endeavors then you can be comfortable here as you can spend time on those. But realize to make a good living here, it is necessary to follow a rigorous plan of cold calling which can be time consuming.

- 13

Current Employee, less than 1 year

**Great company that doesn't micro manage its employees**

Aug 24, 2020 - Funding Specialist in Brooklyn, NY

✔ Recommend   ◯ CEO Approval   ✔ Business Outlook

**Pros**
This was my first job in outbound sales and honestly I haven't looked back since. Great work environment and great people.

- 14

21.     Defendant Advance Funds Networks also hires employees to place outbound telephonic sales calls and text messages to consumers. For instance, Defendant posted online to hire for the role of Outbound Financial Sales Agent to place outbound telemarketing calls and text messages to solicit business: [15]

Generate & prospect consistently. Ability to communicate professionally and effectively with business owners and team members. Company wide online meetings on Mondays, Wednesdays & Thursdays.

**Qualifications:**

Phone experience a must (sales, telemarketing & prospecting). Tons of energy, passion and enthusiasm alongside basic sales skills are a must. Superior communications skills and the ability to use our CRM (Quick base & RingCentral). The majority of our business is done via email, text & phone.

---

[13] https://www.indeed.com/cmp/Advance-Funds-Network-LLC-2/reviews?fcountry=US&sort=rating_asc
[14] https://www.glassdoor.com/Reviews/Advance-Funds-Network-Reviews-E3617992.htm
[15] https://www.indeed.com/cmp/Advance-Funds-Network-LLC-2/jobs?start=0

enthusiasm alongside basic sales skills are a must. Superior communications skills and the ability to use our CRM (Quick base & RingCentral). The majority of our business is done via email, text & phone.

Ability to be coached and follow a proven & scalable sales process. Building long term residuals & happy clients is our goal.

Ability to exercise own judgment and discretion and work independently. We are not looking to micro-manage people.

**Benefits:**

Effort based incentives. Commissions paid weekly Direct Deposit.

Fully Integrated Cloud based CRM (Intuit Quick base), Fully supported Ring Central Soft Phone integration. Fully supportive front & back offices, Daily online live meetings and trainings.

A constantly renewed & scrubbed database. We've been successfully generating prospects & revenue for the last 13 years. It's full of new opportunities for the hustling agent & now the Remote Work From Home Agent or digital nomad.

22.     In response to these calls, Plaintiff Gadke brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF GADKE'S ALLEGATIONS

23.     Plaintiff Gadke is the subscriber and the sole user of the cell phone number ending with xxx-xxx-5264.

24.     Plaintiff Gadke registered his cell phone number on the National Do Not Call Registry on January 6, 2022.

25.     In December 2021, Plaintiff Gadke started receiving telephonic solicitation text messages from Defendant Advance Funds Network using different

phone numbers offering him financing solutions for his business, using automated systems designed to identify and respond to certain keywords like, yes, stop, etc.

26.    On December 22, 2021, at 9:04 AM, Plaintiff received a text message to his cell phone from the phone number 860-775-6680. The text message was soliciting business loans to the Plaintiff. The telephone solicitor failed to provide their full name, or the name of the company on whose behalf the solicitation text message was sent.



27.    On calling this phone number, 860-775-6680, back, Plaintiff is unable to reach Defendant Advance Funds Network. This phone number is operated using an automated system which is programmed to respond to certain pre-defined keywords, for instance, 'Help':



28.    Plaintiff continued to receive solicitation text messages from the Defendant even after registering his cell phone number on the National Do Not Call Registry.

29.    On January 13, 2022, at 11:01 AM, Plaintiff received another solicitation text message from the Defendant, this time using the phone number 708-943-9243, soliciting business loans to the Plaintiff.



30.    Defendant Advance Funds Network again failed to identify the name of the business on whose behalf the text message was sent, and the first and last names of the person who sent the solicitation text message to the Plaintiff's cell phone.

31.    On calling the phone number 708-943-9243, it is answered by Defendant Advance Funds Network employees.

32.    On January 31, 2022, at 12:10 PM, Plaintiff received a text message from the Defendant using the phone number 910-516-6280 to his cell phone. This solicitation text message also failed to identify the first and last names of the person

who sent the text message and the name of the business on whose behalf the solicitation was sent to the Plaintiff's cell phone.



33. On February 10, 2022, at 11:57 AM, Plaintiff received another solicitation text message from the Defendant using the phone number 910-516-6280 to his cell phone. Defendant again failed to identify the name of the business on whose behalf the solicitation was sent and the first and last names of the person who sent the solicitation to the Plaintiff's cell phone.

34. On calling this phone number, 910-516-6280, it is answered by Defendant Advance Funds Network employees.

35. The unauthorized telephonic sales text messages that Plaintiff received from Defendant, as alleged herein, have harmed the Plaintiff in the form of

annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

36.     Seeking redress for these injuries, Plaintiff Gadke, on behalf of himself and Classes of similarly situated individuals, bring suit under the FTSA.

## CLASS ALLEGATIONS

37.     Plaintiff Gadke brings this action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), and seek certification of the following Classes:

**Autodial Class:** All persons in Florida, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call the Plaintiff.

**Unidentified Telephone Solicitor Class:** All persons in Florida, who, on or after July 1, 2021, (1) received an unsolicited telephonic sales call from the Defendant, (2) in which they failed to identify the full name of solicitor and the business on whose behalf the solicitation call was placed, as in the solicitation received by the Plaintiff.

**DNC Class:** All persons in Florida, (1) whose telephone numbers appear on the then-current "no sales solicitation calls" list, and (2) who received unwanted telephonic sales call from or on behalf of the Defendant.

**Spoofed Phone Number Class:** All persons in Florida, who (1) received a telephonic sales call from or on behalf of the Defendant, (2) using a phone number which the recipients of the call were unable to call back, or (3) on calling those number back, the recipients were unable to reach the Defendant or their agents, as in the Plaintiff's case.

38.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Gadke anticipates the need to amend the Class definitions following appropriate discovery.

39.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

40.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the FTSA; and

(b)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

41.  **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendant have no defenses unique to the Plaintiff. The Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

42.  **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Gadke. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible

for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Gadke and the Autodial Class)**

43.    Plaintiff repeats and realleges paragraphs 1 through 42 of this Complaint and incorporates them by reference herein.

44.    Plaintiff brings this claim individually and on behalf of the Autodial Class Members against the Defendants.

45.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

46.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

47. Defendant failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

48. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

49. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

50. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## SECOND CLAIM FOR RELIEF
### Violation of the Florida Telephone Solicitation Act,
### (Fla. Stat. § 501.059)
### (On Behalf of Plaintiff Gadke and the Unidentified Telephone Solicitor Class)

51. Plaintiff repeats and realleges paragraphs 1 through 42 of this Complaint and incorporates them by reference herein.

52. Plaintiff brings this claim individually and on behalf of the Unidentified Telephone Solicitor Class Members against the Defendants.

53. The FTSA requires "any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone

number" to mandatorily "identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2)

54.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

55.     In violation of the FTSA, Defendant failed to identify the name of the telephone solicitor or the business on whose behalf those unsolicited telephonic sales calls were made and/or caused to be made to the Plaintiff, and other members of the Unidentified Telephone Solicitor Class.

56.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

<b><u>THIRD CLAIM FOR RELIEF</u></b><br>
<b>Violation of the Florida Telephone Solicitation Act,</b><br>
<b>(Fla. Stat. § 501.059)</b><br>
<b>(On Behalf of Plaintiff Gadke and the DNC Class)</b>

57. Plaintiff repeats and realleges paragraphs 1 through 42 of this Complaint and incorporates them by reference herein.

58. Plaintiff brings this claim individually and on behalf of the DNC Class Members against the Defendants.

59. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." Fla. Stat. § 501.059(4)

60. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

61. In violation of the FTSA, Defendant made and/or cased to be made unsolicited telephone sales calls to Plaintiff, and other members of the DNC Class despite their telephone numbers appearing on the quarterly listing published by the department.

62. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a

minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

### FOURTH CLAIM FOR RELIEF
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**
**(On Behalf of Plaintiff Gadke and the Spoofed Phone Number Class)**

63.　　Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

64.　　Plaintiff brings this claim individually and on behalf of the Spoofed Phone Number Class Members against Defendant.

65.　　It is a violation of the FTSA "for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the

seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed on a device in or connected to the subscriber's telephone." Fla. Stat. § 501.059(8)(b).

66.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

67.     Defendant failed to ensure that the phone number which was displayed in the caller identification service for the telephonic sales call made by them to the Plaintiff was capable of receiving phone calls if the Plaintiff tried to call it back. The Plaintiff was unable to connect with the Defendant upon calling the phone number which was displayed on their cell phone's caller identification system for the telephonic sales call received from the Defendant.

68.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members using spoofed

phone numbers or phone numbers which could not be called back by the Plaintiff or the other Class members.

69.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Classes are also entitled to an injunction against future calls. *Id*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)   An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)   An award of damages and costs;

c)   An order declaring that Defendant's actions, as set out above, violate the FTSA;

d)   An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)   Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Gadke requests a jury trial.

**KYLE NICHOLAS GADKE**, individually
and on behalf of all others similarly situated,

DATED this 27th day of April, 2022.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar No. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative
Classes*